IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 06 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| AIESHA B. CALLAHAN,<br><br>   *Plaintiff,*<br>v.<br><br>EMORY HEALTHCARE, INC.,<br><br>   *Defendant.* | Civil Action No:<br><br>**1:21-CV-1367**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Aiesha B. Callahan, Pro Se without benefit of counsel, and for cause of action against Defendant, Emory Healthcare INC., ("EHC"), respectfully states as follows:

### JURISDICTION AND VENUE

1. Plaintiff invokes jurisdiction over this court pursuant to claims under the Americans with Disabilities Act of 1990, as amended 42 U.S.C. § 12101– under 28 U.S.C. §§ 1331 and 1343(a).

2. The unlawful employment practices alleged in this complaint, were committed within this District pursuant to 28 U.S.C. § 1391.

1

## PARTIES

3. Aiesha B. Callahan is an adult citizen of the United States, who resides in Atlanta, Georgia, Fulton County – within the same jurisdiction of this Court.

4. EHC hired Ms. Callahan on February 25, 2013 as an Anesthesia Technician at Emory University Hospital Midtown ("EUHM") in Atlanta, Georgia, Fulton County.

5. September 10, 2019, Defendant terminated Ms. Callahan's employment from her position as Patient Administrative Liaison ("PAL") at Emory University Hospital at Wesley Woods ("EWWH") in Atlanta, Georgia, Dekalb County.

6. EHC is a domestic nonprofit corporation, licensed to conduct business in Georgia with multiple locations in this District.

7. EHC is a person, employer and engages in industry that affects commerce within the meaning of § 701 of Title VII of the Civil Rights Act of 1964 as modified by the 1991 Civil Rights Act, 42 U.S.C.§ 2000e.

8. At all times material to this complaint, EHC conducted business within this State, District and maintained more than 15 employees within the meaning of 42 U.S.C. §2000e(b).

9. Service of this complaint will be rendered by Plaintiff to EHC's counsel (who will also be served by the Clerk with the ECF filing system) and registered

2

agent, in accordance with to the Certificate of Service herein, therefore Summons may not be necessary.

## ADMINISTRATIVE PREREQUSITES

10. Plaintiff filed a timely Charge of ADA discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and files this action within 90-days receipt of the EEOC's Notice of Right to Sue, dated March 31, 2021. *See,* Exhibit A.

## STATEMENT OF THE FACTS

11. Ms. Callahan commenced FMLA leave on March 19, 2017.

12. While on leave – May 23, 2017, her physician completed Emory University's Office of Accessibility Services ("OAS") intake medical questionnaire and requested that she be reassigned for accommodation from her prior role as Patient Administrative Liaison ("PAL") at Emory University Hospital's Emergency Department.

13. OAS registered Ms. Callahan with its department because she is a qualified individual with disability.

14. In June 2017, Sharon Barrett, Human Resources Manager, informed her superior Melanie De Gennaro, Vice President of Human Resources, that Ms.

3

Callahan was searching for transfer opportunities, because of her physician's accommodation request.

15. Ms. De Gennaro contacted hiring managers in her network, located, and offered Ms. Callahan accommodation into a PAL position at EWWH – created just for her, which was not published as an open position.

16. After not being selected for any position she applied for – including the PAL position at EUHM and three Anesthesia Technician positions – rather than being terminated and under duress, Plaintiff accepted the accommodation offered at EWWH and her first day was July 10, 2017.

17. The premise of Ms. Callahan's reassignment to EWWH, was based on accommodation received by EHC – per her physician's May 2017 accommodation request – coordinated through OAS and EHC.

18. December 15, 2017, Ms. Callahan received clarification of her essential job duties- because of an interactive process for accommodation request on November 10, 2017 – coordinated through OAS and EHC.

19. OAS requires that all supervisors consult with its office and its registered individuals before any provided accommodations are changed.

20. July 9, 2019, Ms. De Gennaro informed Ms. Callahan that her essential duties would be changed.

21. Ms. Callahan asked Ms. De Gennaro and Ed Lawrence, Director, for the job description of the part-time Utilization Review Specialist position, which they stated would be added to her PAL job as a second job, and no job description was provided, therefore Ms. Callahan declined the position.

22. July 17, 2019, Mr. Lawrence met with Ms. Callahan and informed her that she had no choice and could not decline the additional job as a part-time Utilization Review Specialist and scheduled her for training with Melody McCaulla, RN Utilization Review Specialist – without consulting with OAS or receipt of Ms. Callahan's informed consent.

23. Mr. Lawrence was aware that Ms. Callahan received accommodation at EWWH, after a leave of absence, because her physician determined that she was unable to return to her prior role at EUH.

24. Mr. Lawrence and Ms. De Gennaro – specifically targeted Ms. Callahan as the only employee within the entire EHC enterprise required to accept the additional job at EWWH as a part-time Utilization Review Specialist.

25. Ms. Callahan has never held a position with EHC in a Utilization Review department, or any position as and/or like that of a Utilization Review Specialist.

26. In contrast to Ms. McCaulla's qualifications, Ms. Callahan was not a Registered Nurse.

27. The part-time Utilization Review Specialist position was not published as an open position – as was the same with the PAL position at EWWH offered to Ms. Callahan for accommodation.

28. Ms. Callahan did not accept the position in the Utilization Review Department and did not attend the first training scheduled for July 23, 2019 by Mr. Lawrence – without consulting with OAS or receipt of Ms. Callahan's informed consent.

29. Ms. Callahan escalated complaints to Mary Beth Allen, Chief of Human Resources, regarding ongoing discrimination and retaliation, by way of interference of the accommodation received – per her May 2017 accommodation request – Ms. Allen did not intervene – instead, she stated to the effect that Mr. Lawrence could assign her the additional job – without consulting with OAS or receipt of Ms. Callahan's informed consent.

30. August 5, 2019, Mr. Lawrence rescheduled Ms. Callahan for training on August 6, 2019 with Ms. McCaulla – without consulting with OAS or receipt of Ms. Callahan's informed consent, and again Ms. Callahan informed Mr. Lawrence that without a job description or consultation with OAS, she could not accept the position.

31. August 7, 2019, Ms. De Gennaro and Mr. Lawrence issued Ms. Callahan a written reprimand.

32. August 16, 2019, Ms. Callahan attended training with Ms. McCaulla, scheduled by Mr. Lawrence – without consulting with OAS or receipt of Ms. Callahan's informed consent, and was excused by Ms. McCaulla, because Ms. Callahan informed her that she was coerced into attending training and never accepted the position.

33. August 27, 2019, Mr. Lawrence again scheduled Ms. Callahan for training, without consulting with OAS or receipt of Ms. Callahan's informed consent.

34. And, on August 28, 2019, Ms. Callahan again attended training, but was excused by Ms. McCaulla, because Ms. Callahan did not have any access permitted to access Patient Health Information ("PHI") to complete the training and Ms. Callahan informed her that she was coerced into attending training and never accepted the position.

35. September 4, 2019, Ms. De Gennaro and Mr. Lawrence issued Ms. Callahan a written reprimand.

36. EHC's employees whose job functions require use of devices or software applications, are scheduled for classes to be trained by training specialist – coordinated through the Organizational Development Department and during training – employees are assigned fictitious logins, passwords, and PHI accounts.

37. EHC's employees are not permitted to share and/or use any other employees' logins and passwords for any reason.

38. EHC's employees are required to log-out of all devices and/or software applications after each use.

39. EHC's employees are not permitted to access PHI with another employee's login and password.

40. EHC's employees are not permitted to access PHI – unless it is the minimum necessitated by their essential job functions.

41. EHC's employees who access PHI with another employee's login and password are subject to Federal Health Insurance Portability and Accountability Act of 1996 ("HIPAA") 42 U.S.C. 1320d to d-9 violations and EHC policy violations.

42. EHC's employees who access PHI that is not the minimum – necessitated by their essential job functions – are subject to HIPAA and EHC policy violations.

43. When EHC provided Ms. Callahan with accommodation as a PAL at EWWH, she was not granted access like that of Ms. McCaulla's, which permitted access to software applications and PHI required for the part-time Utilization Review Specialist position.

44. Ms. DeGennaro ordered Ms. Callahan to access PHI through Ms. McCaulla's login and password.

45. September 5, 2019, Ms. Callahan was again scheduled for training by Mr. Lawrence – without consulting with OAS or receipt of Ms. Callahan's informed consent , and as coerced, Ms. Callahan again attended training, but was excused by Ms. McCaulla, because she did not have access permitted to access PHI to complete the training and Ms. Callahan informed her that she did not accept the position.

46. September 10, 2019, Ms. Callahan's employment was terminated by Ms. De Gennaro and Catherine Maloney, Vice President of Operations.

47. Ms. Callahan was not escorted by Public Safety or any other staff on the day of her termination, aside from only Ms. De Gennaro, who personally escorted her to gather her belongings, then to her vehicle.

48. In March 2018, Ms. Callahan escalated complaints of disparate treatment per her May 2017 accommodation request and on May 25, 2018, Tanya Shockley, Director of Human Resources concluded her investigation and informed Ms. Callahan, Ms. De Gennaro, Jennifer ("Jen") Schuck, Vice President of Operations, Mr. Lawrence, Ms. Barrett and Ms. Dana Bible, Human Resources Manager, that Ms. Callahan's complaints were investigated and

unsubstantiated. And clarified that Ms. Callahan was reassigned to EWWH, as an accommodation, because of her physician's recommendations.

49. Emory University's Office of Equity and Inclusion investigated a complaint filed by Ms. Callahan – regarding discrimination and retaliation per her May 2017 accommodation request; and on September 24, 2018 determined that Jen Schuck, Ms. De Gennaro and Mr. Lawrence had engaged in discriminatory retaliation in violation of Emory's policies, and no remedies were provided by EHC.

50. Ms. De Gennaro's personal knowledge and perceptions of Plaintiff allege that she was always able to perform her job duties with no *accommodations* and *deficits* in her performance were all behavior based that mostly stemmed from poor interpersonal skills, which she certainly did not attribute to any *mental or physical impairment*.

51. Mr. Lawrence's personal knowledge and perceptions of Plaintiff allege that she was always able to perform her job duties with no *accommodations* and he believed *deficits* in her performance were all behavior based, which he never attributed to any type of limitation caused by a *disability*.

52. Ms. Schuck's perceptions of Plaintiff allege that she was always able to perform her job duties, with no *accommodations* and she believed *deficits* in her performance were all behavior based that mostly stemmed from poor

interpersonal skills, which she certainly did not attribute to any *mental or physical impairment.*

## CLAIMS FOR RELIEF
### COUNT 1 (ADA Interference)

53. Plaintiff repeats and incorporates references at 1-52 herein and upon information and belief, Defendant specifically targeted Ms. Callahan and discriminated against her with hostility, coercive reprimands with threats of termination and interfered with accommodations previously provided by EHC and OAS as per her May 2017 and November 2017 accommodation requests in violation Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§12101, 12203(b) et seq.

### COUNT 2 (ADA Retaliation)

54. Plaintiff repeats and incorporates references at 1-53 herein and upon information and belief, Defendant intentionally retaliated against her for exercise of rights and engagement in protected activities under the ADA – by way of wrongful termination, in violation of the Americans with Disabilities Act of 1990, as amended 42 U.S.C. §§12101, 12203(a) et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable court grant the following relief:

a. Declaratory relief;

b. Punitive damages, actual and compensatory damages of front and back pay from lost wages, benefits, and other expenses which Plaintiff sustained because of Defendant's conduct in violation of the ADA – to be determined by the conscience of a jury;

c. A permanent injunction enjoining Defendant, their officers, agents, successors, employees, attorneys, and those acting in concert with them from engaging in any employment practice or policy which discriminates or retaliates against employees in violation of the ADA;

d. Cordial employment reference letters from Ms. Schuck, Ms. De Gennaro, Ms. Maloney, Ms. Allen, and Mr. Lawrence; and

e. Payment of court fees and any other relief the Court deems just and proper.

Respectfully submitted this 6th day of April 2021.

/s/Aiesha B. Callahan
*Pro Se Plaintiff*

# EXHIBIT A